UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| RAYNOR ADEN WHITCOMBE,<br><br>Petitioner,<br><br>vs.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security,<br><br>Respondent. | 5:26-CV-05086-KES<br><br>ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER, ENJOINING PETITIONER'S REMOVAL FROM SOUTH DAKOTA, AND SETTING DEADLINE FOR ANSWER |

On July 9, 2026, petitioner Raynor Whitcombe filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 against respondent Markwayne Mullin, alleging that he is being unlawfully detained by Immigration and Customs Enforcement (ICE). Docket 1. Whitcombe asserts that he has been present in the United States for 10 years and that ICE arrested him without incident on July 8, 2026, while he was traveling to work. *Id.* ¶¶ 6, 16.

Whitcombe has also filed a motion for temporary restraining order (TRO), requesting that this court follow the relief granted in the materially similar case of *Aleksei M. v. Warden, Lawrence Co. Jail*, 5:26-CV-05030-RAL, 2026 WL 1133615 (D.S.D. Apr. 27, 2026). *Id.* ¶ 22. Specifically, Whitcombe asks this court to (1) temporarily prohibit his removal from the District of South Dakota; and (2) order respondent to release him immediately. *See id.* The motion for a temporary restraining order seeks to prevent respondent from removing

Whitcombe from South Dakota so that this court does not lose jurisdiction and counsel can locate and consult with him. *Id.*

## BACKGROUND

Whitcombe was lawfully admitted to the United States in 2016 and has resided here continuously since that time. *Id.* ¶ 5. The government alleges that Whitcombe is no longer in lawful immigration status. *Id.* ¶ 20.

Whitcombe was previously married to a United States citizen from 2016 until 2022. *Id.* ¶ 6. The couple has an eight-year-old son. *Id.* According to the petition, Whitcombe maintains a close relationship with his son and exercises parenting time each week from Wednesday at 3:30 p.m. until the following Tuesday at 3:30 p.m., as well as every other weekend from Friday through Monday. *Id.* ¶ 7.

Whitcombe is employed as a personal trainer in Rapid City, South Dakota, where he has substantial ties to the community. *Id.* ¶¶ 8-9. Among other things, he operates a summer fitness camp for children, volunteered as a football coach at Central High School in 2024, has spoken to students at Pine Ridge High School about fitness and healthy living, and has presented on healthy living to tribal employees during the Lakota Nation Invitational Basketball Tournament. *Id.* ¶¶ 10-13. According to Whitcombe, his interest in fitness and nutrition stems in part from his Samoan heritage and his upbringing in American Samoa, where obesity rates are among the highest in the world. *Id.* ¶ 14. He states that his presentations often focus on helping

2

Native communities, including Samoan and Lakota communities, address the health challenges associated with modern lifestyles. *Id.* ¶ 15.

Whitcombe will turn thirty-eight years old next week. *Id.* ¶ 17. Before ICE detained him on July 8, 2026, Whitcombe had never been arrested. *Id.* ¶ 18. His only criminal offense arose from a visitation dispute with his former wife. *Id.* ¶ 19. He was charged by complaint, but not arrested, with a Class 2 misdemeanor for entering or refusing to leave property after notice. *Id.* He was sentenced to pay a $100 fine and $78.50 in court costs and was ordered not to return to his former wife's residence for six months. *Id.*

ICE took Whitcombe into custody without incident on July 8, 2026, while he was traveling to work. *Id.* ¶ 16. Whitcombe contends that he has extensive community ties and is not a flight risk. *Id.* ¶ 9.

## LEGAL STANDARD

When ruling on a motion for a temporary restraining order or preliminary injunction, the court considers four factors: (1) the threat of irreparable harm to the moving party; (2) the balance between that harm and the injury an injunction would inflict on other parties; (3) the movant's likelihood of success on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981). The standard governing a motion for a temporary restraining order is the same as that governing a motion for a preliminary injunction. *Tumey v. Mycroft AI, Inc.,* 27 F.4th 657, 665 (8th Cir. 2022). No single factor is dispositive; rather, the court must consider all four

3

factors to determine whether injunctive relief is warranted. *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 667 (8th Cir. 1987).

## DISCUSSION

In *Aleksei M.,* the petitioner sought habeas relief on the ground that his continued detention without a bond hearing violated the Fifth Amendment's Due Process Clause. 2026 WL 1133615, at *1. Applying the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the court concluded that respondents violated petitioner's due process rights by detaining him without a bond hearing, even though the government had authorized him to live and work in the United States through 2029 and his only apparent unlawful or improper conduct was a single speeding-related arrest. *Id.* at *6.  The court therefore granted the habeas petition. *Id.* at *7. Weeks earlier, the court, sua sponte, enjoined respondents from removing the petitioner outside of South Dakota so that petitioner could consult with counsel while the court considered the petition and so that removal of the petitioner from South Dakota did not deprive this court of jurisdiction over the petition. *See Aleksei M. v. Warden, Lawrence Co. Jail*, 5:26-CV-05030-RAL, Docket 4 at 4 (D.S.D. Apr. 1, 2026).

Here, Whitcombe "respectfully requests the same relief" granted in *Aleksei M.* Docket 1 ¶¶ 22-23. Although Whitcombe's motion does not expressly identify the constitutional basis for that request, *see id.* ¶¶ 1-23, the court construes it as alleging that respondent violated the Due Process Clause of the Fifth Amendment by detaining him without an individualized bond determination. When evaluating what process the Constitution requires in a

particular context, courts apply the balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

At this stage, the record indicates that the *Dataphase* factors weigh in favor of granting Whitcombe's request for a temporary restraining order.

First, Whitcombe is likely to succeed on the merits of his Fifth Amendment Due Process claim. As discussed above, Whitcombe alleges that respondent violated the Due Process Clause by detaining him without an individualized bond determination. Applying the balancing test set forth in *Mathews*, the present record weighs in Whitcombe's favor. *See Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) ("Success on the merits has been referred to as the most important of the four factors.").

Whitcombe has a substantial private interest in his continued liberty. According to the petition, he has resided in the United States for approximately 10 years, was previously married to a United States citizen, maintains a close relationship with his eight-year-old son, is gainfully employed, and has substantial ties to his community. Docket 1 ¶¶ 5-9. Before ICE detained him, Whitcombe had never been arrested. *Id.* ¶¶ 18-19. His only criminal offense arose from a visitation dispute with his former wife and resulted in a misdemeanor conviction, a $100 fine, and a no-trespass order. *Id.* ¶ 19. These facts demonstrate a significant private interest in Whitcombe's continued liberty.

Moreover, the present record indicates that Whitcombe has received no individualized bond determination assessing whether he presents either a

danger to the community or a risk of flight. Absent such a determination, the risk of an erroneous deprivation of Whitcombe's liberty is substantial. *See Aleksei M. v. Warden, Lawrence Co. Jail*, 2026 WL 1133615, at \*6 (D.S.D. Apr. 27, 2026).

Finally, although the government undoubtedly has a significant interest in enforcing the immigration laws and ensuring that individuals subject to removal appear for future proceedings, the present record does not suggest that Whitcombe presents either a danger to the community or a meaningful risk of flight. Accordingly, on this record, the government's interest in continuing to detain Whitcombe without an individualized bond determination appears limited. *See id.* Taken together, the *Mathews* factors indicate that Whitcombe is likely to succeed on the merits of his Fifth Amendment Due Process claim.

Whitcombe likewise faces irreparable harm absent temporary relief. *See Dataphase Sys., Inc.*, 640 F.2d at 113. Removal from the district before the court can adjudicate his habeas petition could impair the court's ability to afford meaningful relief, substantially interfere with Whitcombe's ability to pursue his constitutional claims, and result in his removal before those claims can be adjudicated. *See Jose Luis G.G. v. Noem*, 2026 WL 696950, at \*1 (D.S.D. Mar. 12, 2026). By contrast, there is no indication that respondent faces a comparable harm from a temporary order preserving the status quo while the court considers Whitcombe's petition. *See Frank V. v. Olson*, 2026 WL 36120, at \*2 (D. Minn. Jan. 6, 2026) (temporarily enjoining respondents from

transferring habeas petitioner out of the District of Minnesota while habeas petition was pending); *see also Nebraska v. Biden*, 52 F.4th 1044, 1047 (8th Cir. 2022) ("[T]he equities strongly favor an injunction considering the irreversible impact [the challenged agency] action would have as compared to the lack of harm an injunction would presently impose."). The balance of harms therefore favors Whitcombe.

Finally, the public interest favors ensuring that constitutional claims receive meaningful judicial review before potentially irreversible action is taken. Preserving the status quo pending resolution of Whitcombe's habeas petition serves both the public interest in the orderly enforcement of the immigration laws and the public interest in safeguarding constitutional rights.

On the present record, all four *Dataphase* factors weigh in favor of granting Whitcombe's requested temporary restraining order.

## CONCLUSION

Based on the foregoing, it is ORDERED that:

1. The Clerk of Court shall deliver or serve a copy of the Petition and motion for TRO (Docket 1) on the United States Attorney for the District of South Dakota.

2. Respondent shall file an answer to petitioner's habeas corpus petition no later than July 24, 2026, certifying the true cause and proper duration of petitioner's confinement and showing cause why the writ should not be granted.

3. Respondent's answer shall include:

7

a. Any affidavits and exhibits necessary to establish the lawfulness and proper duration of petitioner's detention in light of the issues raised in the habeas petition;

b. A memorandum of law explaining respondent's legal position on petitioner's claims;

c. Respondent's recommendation as to whether an evidentiary hearing should be conducted.

4. If petitioner intends to file a reply to respondent's answer, petitioner must do so no later than July 31, 2026.

5. In order for this court to retain jurisdiction, respondent is ENJOINED, pursuant to Fed. R. Civ. P. 65(b), for 14 days from entry of this Order from moving petitioner outside of South Dakota until further order of the court, so that petitioner may consult with counsel while the court considers the petition and so that removal of petitioner from South Dakota does not deprive this court of jurisdiction over the petition. If petitioner has already been removed from South Dakota, respondent must immediately return petitioner to South Dakota no later than July 24, 2026.

Dated July 15, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

8